IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| UNITED STATES OF AMERICA, | No. 4:19-CR-00361-01 |
| v. | (Chief Judge Brann) |
| JABIN GODSPOWER OKPAKO, | |
| Defendant. | |

**MEMORANDUM OPINION**

MAY 13, 2024

In 2021, Jabin Godspower Okpako pled guilty, pursuant to a written plea agreement, to conspiracy to launder monetary instruments, in violation of 18 U.S.C. § 1956(h).[1] Thereafter, a presentence report was prepared that calculated a total offense level of 32 and a criminal history category I, resulting in a Sentencing Guidelines range of 121 to 151 months' imprisonment.[2]

Okpako received a criminal history score of I because he had no prior convictions, meaning he had no criminal history points.[3] His offense level was driven by several enhancements related to the crime of conviction—primarily the loss attributable to his conduct.[4]

At sentencing, upon consideration of a stipulation reached between Okpako and the Government, this Court calculated a criminal history category I and an offense level

---

[1] Docs. 64, 70.
[2] Doc. 84 at 12-14, 16.
[3] *Id.* at 13-14.
[4] *Id.* at 12-13.

of 27, resulting in an advisory Sentencing Guidelines range of 70 to 87 months' imprisonment.[5] The Court ultimately imposed a sentence of 87 months' imprisonment, finding that such a sentence was sufficient, but not greater than necessary, to accomplish the relevant sentencing goals.[6]

In issuing that sentence, this Court focused heavily on the severity of the offense itself.[7] Victims of the scheme were befriended online and were then convinced to give thousands of dollars to the conspirators under the guise that the conspirator who had befriended the victim was experiencing an emergency or personal crisis.[8] Wire transfers were sent by the victims to Okpako, who then laundered the funds to various bank accounts in Nigeria.[9] Notably, the Federal Bureau of Investigations ("FBI") questioned Okpako about this suspicious banking activity and warned he and his wife of the potential legal consequences of their activities; despite this warning, Okpako continued to launder money into Nigeria.[10]

The Court noted that "Okpako played an instrumental role in defrauding emotionally-vulnerable victims out of thousands of dollars, indeed at least 10 victims lost more than $10,000 to this fraudulent scheme, and one woman was manipulated in to giving $90,000."[11] This "deplorable and . . . unacceptable conduct" strongly

---

[5] Doc. 105 at 8. *See id.* at 4-8.
[6] *Id.* at 21-25.
[7] *Id.* at 22-24.
[8] *Id.* at 22.
[9] *Id.*
[10] *Id.* at 22-23.
[11] *Id.* at 24.

warranted an 87-month sentence.[12] Okpako appealed, but his sentence was affirmed by the United States Court of Appeals for the Third Circuit.[13]

Currently pending before the Court is Okpako's motion for a sentence reduction pursuant to 18 U.S.C. § 3582(c)(2) and the retroactive application of Amendment 821 to the *United States Sentencing Guidelines Manual* (2023).[14] Okpako asserts that he qualifies for a two-level reduction to his offense level under the newly created USSG § 4C1.1, which permits such a reduction if a defendant meets a number of criteria.[15] Okpako further argues that, based on his exemplary record while incarcerated, his sentence should be reduced to time served.[16]

Although the Government acknowledges that Okpako is eligible for relief pursuant to Amendment 821, it opposes his request for a sentence reduction on three grounds.[17] First, the Government contends that the stipulation crafted between it and Okpako at sentencing was an effort to reach a fair sentence for Okpako, and a reduction would undermine that effort.[18] Second, the Government argues that the seriousness of the offense militates against a reduction.[19] Finally, it asserts that a reduction would be at odds with the purpose of USSG § 4C1.1, which was to account for the fact that

---

[12] *Id.*
[13] Docs. 103, 124.
[14] Doc. 129.
[15] Doc. 131 at 4-6.
[16] *Id.* at 6-7.
[17] Doc. 135.
[18] *Id.* at 5.
[19] *Id.*

defendants with zero criminal history points often received downward variances whereas, here, no downward variant sentence was imposed.[20]

"[A]s a general matter, a court cannot modify a term of imprisonment after it has been imposed without specific authorization."[21] However, pursuant to § 3582(c)(2), district courts may reduce a defendant's sentence if (1) "the term of imprisonment [was] based on a sentence range that has subsequently been lowered by the Sentencing Commission," and (2) "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."[22] The Sentencing Guidelines provide that a sentence reduction "is not consistent with [USSG § 1B1.10], and therefore is not authorized under 18 U.S.C. § 3582(c)(2)," if, *inter alia*, an amendment does not have the effect of lowering the defendant's applicable Sentencing Guidelines range.[23]

The Sentencing Guidelines explain that, in determining whether an amendment has the effect of lowering a Sentencing Guidelines range, "the court shall determine the amended guidelines range that would have been applicable" had the relevant amendment been in place at the time of sentencing, and "the court shall substitute only the [relevant] amendment[] . . . for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected."[24] If a sentence reduction is permissible, courts must

---

[20] *Id.* at 5-6.
[21] *McMillan v. United States*, 257 F. App'x 477, 479 (3d Cir. 2007).
[22] 18 U.S.C. § 3582(c)(2). *See* USSG § 1B1.10(a)(1) (2023); *Dillon v. United States*, 560 U.S. 817, 824-26 (2010).
[23] USSG §§ 1B1.10(a)(2)(B), 1B1.10(d) (2023).
[24] *Id.* § 1B1.10(b)(1).

4

then consider "the factors set forth in section 3553(a) to the extent that they are applicable" to determine whether a reduction is warranted under the circumstances.[25]

As relevant here, Amendment 821 creates a new section of the Sentencing Guidelines that provides a two-level offense level reduction for defendants who receive zero criminal history points, and whose offense does not include any of the aggravating circumstances set forth in USSG § 4C1.1(a).[26] The Government concedes that Okpako meets the conditions of § 4C1.1(a), and is therefore eligible for a sentence reduction, "as he neither had criminal history points at sentencing, nor met any of the listed aggravating factors."[27] The Court therefore assumes for the purposes of this motion that Amendment 821 does have the effect of lowering Okpako's Sentencing Guidelines range and renders him eligible for a sentence reduction. Nevertheless, the relevant 18 U.S.C. § 3553(a) factors weigh against such a reduction.

The seriousness of Okpako's offense—the dominant § 3553(a) factor that drove the original sentence—remains unchanged. As this Court noted during sentencing, Okpako was part of a fraudulent scheme where his coconspirators "befriended their victims, primarily American women between the ages of 55 and 85, through various social media and dating sites and then persuaded the victims to give them thousands if not tens of thousands of dollars, claiming that they needed the money because of

---

[25] 18 U.S.C. § 3582(c)(2).
[26] USSG § 4C1.1(a).
[27] Doc. 135 at 2.

purported emergencies or personal crises."[28] Okpako's actions directly contributed to losses of $744,800.[29]

Okpako was not simply a passive conspirator either, as his contributions to the conspiracy were "instrumental" to the criminal activity.[30] Okpako and his coconspirators stole substantial sums of money from "emotionally-vulnerable people," many of whom were elderly.[31] This "deplorable" scheme by Okpako and his coconspirators severely harmed its victims.[32] And although Okpako professed that he was originally ignorant of the aims of the conspiracy, the record demonstrates that the FBI interviewed Okpako and warned him against his criminal behavior, but he persisted in the conspiracy.[33] Therefore, at some point during the conspiracy, Okpako came to know exactly what he was doing—he knew that he was stealing from and hurting individuals, but he continued to do so anyway. This conduct indicated then, and still indicates now, a strong need to promote respect for the law, protect the public from future crimes, and deter Okpako and others from future criminal behavior.

Okpako nevertheless argues that a sentence reduction is appropriate because he has served a large portion of his sentence, "has maintained clear conduct," been employed in prison since April 2022, and has been working toward "his GED and

---

[28] Doc. 105 at 22.
[29] *Id.* at 23.
[30] *Id.* at 24.
[31] *Id.*
[32] *Id.*
[33] *Id.* at 22-23.

participates in other programming."[34] Mr. Okpako's "claimed efforts in furtherance of rehabilitation, while commendable, are expected."[35] Those efforts do not alleviate the Court's concern regarding the seriousness of his prior conduct, or its concern with Okpako's decision to continue participating in the conspiracy even after being warned against it by the FBI.

In sum, the Court finds that the same relevant 18 U.S.C. § 3553(a) factors that led the Court to impose an 87-month sentence require that Okpako's motion for a sentence reduction be denied. Consequently, Okpako's motion for a sentence reduction, pursuant to 18 U.S.C. § 3582(c)(1)(A) and Amendment 821, (Doc. 129), is denied.

BY THE COURT:

*s/ Matthew W. Brann*
Matthew W. Brann
Chief United States District Judge

---

[34] Doc. 131 at 6-7. *See also* Doc. 136 at 2.
[35] *United States v. Bledsoe*, No. 22-2022, 2022 WL 3536493, at *2 (3d Cir. Aug. 18, 2022).